HAWKES, C.J.
 

 Chemrock appeals the dismissal of its lawsuit due to a lack of prosecution. Tampa Electric filed and served a notice of lack of prosecution on Chemrock under Florida Rule of Civil Procedure 1.420(e) (2008) following ten months of record inactivity. Chemrock responded within the sixty-day grace period created by the amended Rule by filing what it labeled a “motion in opposition.”
 
 [1]
 
 In the filing, Chemrock admitted there had been a ten-month period of inactivity, but attributed the delay to Tampa Electric.
 
 [2]
 
 Sixteen months after Chem-rock’s filing, Tampa Electric moved to dismiss the action due to a lack of prosecution. At the pre-dismissal hearing, the trial court granted Tampa Electric’s motion.
 

 The question presented is whether any filing served during the 60-day grace period is sufficient to avoid dismissal under the amended version of Rule 1.420(e). We find the grace period requires more than just a filing, and affirm. To support our conclusion, we will describe the Rule’s history; discuss how this interpretation is the only one consistent with the purpose for creating the grace period; and explain how this interpretation is necessary to give effect to each provision of the amended Rule.
 

 History of Rule 1.420(e)
 

 Prior to January 1, 2006, Rule 1.420(e) allowed a case to be dismissed for lack of prosecution when there was no “record activity” during the preceding
 
 twelve
 
 months. Under this version of the Rule, the Supreme Court established a bright-line test for “record activity,” defining it as
 
 *761
 
 any document filed in the record.
 
 See Wilson v. Salamon,
 
 928 So.2d 863, 368 (Fla.2005). In so doing,
 
 Wilson
 
 receded from precedent that attempted to differentiate between active “record activity” — activity designed to hasten the case to a conclusion on the merits — and passive “record activity” — activity which had no effect on the case’s progress.
 
 Id.
 
 at 369;
 
 see also Diamond Drywall Sys., Inc. v. Mashan Contractors, Inc.,
 
 943 So.2d 267, 269 (Fla. 3d DCA 2006). Therefore, at the time of
 
 Wilson,
 
 the only relevant consideration before a case could be dismissed under the Rule was the passage of time.
 

 Shortly after
 
 Wilson,
 
 the Supreme Court amended Rule 1.420(e) to its current version, incorporating two significant changes. First, it shortened the period of time that must elapse before the moving party can take action from twelve months to ten months. Second, it created a sixty-day grace period during which the non-moving party had various options to avoid dismissal. These changes widened the scope of the Rule, permitting a trial court to consider more than just the passage of time before dismissing a case for lack of prosecution.
 

 The prior version of Rule 1.420(e) gave the nonmoving party no option to avoid dismissal if good cause for the lack of prosecution could not be shown. The non-moving party had to either satisfy the
 
 Wilson
 
 test by making a filing, either active or passive, at least once during each twelve-month period, or receive a dismissal. Under the current version of the Rule, the
 
 Wilson
 
 test still applies, but the relevant time period has been shortened from twelve months to ten. However, the non-moving party is given a grace period to recommence prosecution.
 

 This appeal focuses only on the grace period. Under the amended version of the Rule, the nonmoving party may avert dismissal during the grace period in one of three ways: (1) move for and obtain a stay; (2) show “good cause” as to why the action should remain pending;
 
 [3]
 
 or (3) recommence prosecution by taking action to move the case toward conclusion. Although the nonmoving party could have shown good cause under the prior version of the Rule, the amended version creates the right of the nonmoving party to move for a stay during the grace period and, in the Committee notes, for the first time allows an opportunity to recommence prosecution.
 

 The Second and Third Districts have extended
 
 Wilson’s
 
 broad definition to any grace period filings.
 
 See Pagan v. Facilicorp, Inc.,
 
 989 So.2d 21, 23 (Fla. 2d DCA 2008);
 
 Padron v. Alonso,
 
 970 So.2d 399, 401 (Fla. 3d DCA 2007);
 
 Edwards,
 
 961 So.2d 1048, 1049-50 (Fla. 2d DCA 2007). According to this interpretation, which Chemrock urges us to adopt, any filing during the sixty-day period, regardless of merit, ipso facto averts dismissal. This interpretation renders any role the trial court may play, any equitable arguments the moving party may be able to raise, and the facts of the case irrelevant. It is contrary to the Committee’s intent and divests the Rule of all meaning.
 
 [4]
 

 Committee’s Intent
 

 The Committee notes to the amended version of Rule 1.420(e) explain that the
 
 *762
 
 subdivision was amended “to provide that an action may not be dismissed for lack of prosecution without prior notice to the claimant and adequate opportunity for the claimant
 
 to re-commence prosecution of the action to avert dismissal.”
 
 Fla. R. Civ. P. 1.420(e), committee notes (2005 amend.) (emphasis added). The Committee’s clear intent that a sixty-day period be provided to “re-commence prosecution” is frustrated by allowing a party to file any document during this period, however meaningless and inconsequential to the case’s progression, to avoid dismissal.
 

 Indeed, if the interpretation urged by Chemrock prevails, the only way a case would ever be dismissed under the Rule is by consent of the parties or because an extremely negligent attorney fails to take the simplest of steps. Since the parties already have the ability to dismiss by consent, this interpretation renders the Rule void of any impact on litigation and severely limits a trial court’s ability to control its docket.
 

 Language of the Rule
 

 The language of the amended Rule also defeats Chemrock’s argument. The Rule gives two examples of filings which may be made during the sixty-day period. Neither will automatically avoid dismissal.
 

 First, the Rule precludes dismissal if a stay is “issued or approved” during the sixty-day period. A stay can be “approved” only if it is requested by one of the parties. A request can only be made by some kind of filing. Although there may be many reasons to request a stay, the language of the Rule contemplates that the request would be made; that it must be made during the sixty-day period; and it might or might not be “approved.” The Rule specifically requires that the stay be “issued or approved prior to the expiration of such 60-day period.” In fact, the Rule requires the trial court to dismiss the action if the motion for the stay is not approved prior to the expiration of the 60 days. The mere filing of a motion for a stay is not enough to avoid dismissal. This language in the Rule is rendered unnecessary by the simplistic interpretation urged by Chemrock. According to Chemrock, merely asking for the stay would be sufficient to avoid dismissal; the trial court’s approval, or indeed, even its denial, would be irrelevant.
 

 Second, upon receipt of a notice of lack of prosecution, the Rule allows the non-moving party to submit a filing showing “good cause” as to “why the action should remain pending.” The Rule requires this filing be made in writing at least five days before the hearing on the motion for dismissal.
 
 [5]
 
 Since the hearing may be held at any time after the sixty-day period has expired, the “notice of good cause” may, by necessity, be filed during the sixty-day period. Under the previous version of the Rule, “good cause” could be argued, but there was no grace period. Had the Supreme Court meant the amendment to merely insert a notice requirement, it would have been unnecessary, and indeed even foolish, to specifically identify a “good cause” filing. In fact, such a result could have been accomplished with significantly fewer words and much greater clarity. The requirement to show “good cause” is not necessary if any filing is sufficient. There is no reason to require an already over-burdened trial court to evaluate facts
 
 *763
 
 and circumstances that may frequently require evidentiary hearings if any filing will suffice.
 

 Conclusion
 

 In their filing during the grace period, Chemrock did not indicate it was attempting to re-commence prosecution. Nor did it request a stay. The filing simply acknowledged that Tampa Electric was correct in claiming the record had been inactive for ten months, but argued Chemrock was not at fault.
 
 [6]
 
 Should Chemrock prevail, it will be able to continue the litigation perpetually by filing similar acknowledgments (“Yes — we still have not done anything”) whenever a notice of lack of prosecution is filed.
 
 [7]
 

 If the current version of Rule 1.420(e) is to have any role in civil litigation, Chem-rock’s filing during the grace period cannot be found sufficient to avoid dismissal. Accordingly, the trial court properly dismissed the ease for lack of prosecution. We find the
 
 Wilson
 
 definition of “record activity” applicable to the ten months before the notice of lack of prosecution may be filed, but inapplicable to the sixty-day grace period following service of the notice. To the extent that
 
 Pagan, Padrón,
 
 and
 
 Edwards
 
 hold differently, we certify conflict.
 

 AFFIRMED.
 

 CLARK and WETHERELL, JJ„ concur.
 

 [1]
 

 . A motion, by definition, asks a court to take some action. Chemrock's "motion in opposition” is really more of a notice, an objection, or perhaps a memorandum of law. It would be difficult to find it is a "motion,” despite its label.
 

 [2]
 

 . This filing could have been used by Chem-rock to show "good cause” for the lack of prosecution. Thus, Chemrock could have avoided dismissal under the amended Rule had the trial court been convinced.
 

 [3]
 

 . Obviously, the only requirement under the Rule for filing the notice of "good cause" is that it be submitted at least five days before the pre-dismissal hearing. The hearing may occur any time after the grace period ends.
 

 [4]
 

 . Importantly, this discussion does not involve whether
 
 Wilson
 
 continues to apply to the period of record inactivity which must transpire prior to initiating dismissal proceedings. The language of the current version of Rule 1.420(e) certainly implies that
 
 Wilson
 
 still applies to this ten-month period, (stating a notice of lack of prosecution may be served "[i]n all actions in which it appears on the
 
 *762
 
 face of the record that
 
 no activity
 
 by filing of pleadings, order of court,
 
 or otherwise
 
 has occurred for a period of 10 months”). The only change in language in this section of the Rule was shortening the twelve-month period to ten months.
 

 [5]
 

 . Chemrock's position also renders a hearing pointless. Why should the trial courL hold a hearing regarding a motion to dismiss for lack of prosecution if the outcome is readily apparent due to the fact that a "good cause” filing has been made?
 

 [6]
 

 . Again, the Rule would allow this argument to be used in an effort to show good cause at the pre-dismissal hearing. But, of course, if Chemrock's position is accepted on appeal, the pre-dismissal hearing is unnecessary except perhaps for those negligent attorneys who fail to file any paper during the sixty-day period.
 

 [7]
 

 . According to this interpretation, such, filings as a notice of unavailability submitted when counsel is going on vacation, a change of address, or even an acknowledgment of receipt of the notice of lack of prosecution would be sufficient to avoid dismissal.